**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA NORTHERN DIVISION**

| | | |
|---|---|---|
| **ROY J. FIKES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:25-cv-451-KD-N** |
| **PERRY COUNTY COMMISSION, BILLY JONES, and ALBERT TURNER, JR.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# ORDER

Defendants filed Motion to Dismiss (Doc# 16, hereinafter "Motion") the First Amended Complaint (Doc# 13) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff filed a brief in opposition to the Motion (Doc# 20, hereinafter "Opposition") and Defendants subsequently filed a reply brief (Doc# 22, hereinafter "Reply"). After consideration of the pleadings, the parties' briefs, and applicable law, the Motion is ripe for disposition.

## A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is "plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pleading need only contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations … a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do …. Factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ….

*Twombly*, 550 U.S. at 555 (citations and footnotes omitted). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Roy v. Ivy*, 53 F.4th 1338, 1351 (11th Cir. 2022) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

## B. Count I and Count II – First Amendment § 1983 claims against all Defendants

According to the operative pleading, at the outset of the month of November 2023, Plaintiff was employed in good standing as Chief Deputy of Perry County, Alabama. First Amended Complaint ¶¶ 8-9. Before November 7, 2023, Plaintiff informed Defendant Jones, the Sheriff of Perry County,[1] that Plaintiff was "running for Probate Judge in Perry County [while] off duty and out of uniform as required." *Id.* ¶ 11 (footnote omitted). Around this time, "Plaintiff informed Defendant Billy Jones he was electing to use his accumulated annual leave (vacation) time instead of unpaid political leave," which was a valid "option under the Perry County Sheriff's

[1] First Amended Complaint ¶¶ 2, 10.

Employee Policies and Procedures under which he was hired and employed." *Id.* ¶ 12. Plaintiff avers that he "was not paid for any of the time he was off to lawfully pursue political office in 2023" and that he was "not allowed to use his accrued leave". *Id.* ¶¶ 13-14; *see also* Plaintiff's sworn Notice of Claim at 2 (attached to First Amended Complaint as Doc# 13-1) ("I had sufficient annual leave to cover my time spent running for office, but it was denied to me by the Sheriff and the County Commission."). "Plaintiff Fikes was exercising his First Amendment free speech rights by running for the public office of Probate Judge in Perry County in 2023." *Id.* ¶ 30. Plaintiff alleges that Sheriff Jones, acting in concert and cooperation with Albert Turner Jr and the Perry County Commission, terminated Plaintiff from his position as Chief Deputy on December 17, 2023, "because he qualified for and ran for the Office of Probate Judge of Perry County in the primary election" in 2023. *Id.* ¶¶ 60-61.

Count I specifies "a claim against Defendant Sheriff Billy Jones and the Perry County Commission [and Albert Turner, Jr.] arising under The Constitution of the United States as amended, specifically the First Amendment right to Free Speech … enforceable pursuant to § 42 U.S.C. 1983 [sic] for adverse actions taken under color of state law." First Amended Complaint ¶ 52.[2] Plaintiff avers that Defendants took

---

[2] Like ¶ 52 of the First Amended Complaint, the *ad damnum* clause of Count I explicitly states a request for judgment "against Defendants Sheriff Billy Jones and the Perry County Commission" *Id.* at 11. Accordingly, Defendants contend that "Count I seeks relief only from Sheriff Jones and the County Commission." Motion at 3. However, in the body of Count I, Plaintiff expressly pleads that Defendant Albert Turner, Jr., is liable under that count. First Amended Complaint ¶¶ 54, 55. *See also* Opposition at 8, 16 (Plaintiff argues that Turner is liable under Count I). The Court construes Count I as alleging a § 1983 claim against Jones, the Perry

"tangible employment action against plaintiff … by firing him under color of state law in violation of his civil rights under the First Amendment … for running for Probate Judge of Perry County." *Id.* ¶ 56.

Plaintiff further contends that Defendants interfered with his First Amendment right to run for political office and retaliated against him for exercising his right to run for political office by "denying him earned leave and terminating his employment" as Chief Deputy Sheriff of Perry County "without just cause." *Id.* ¶ 31.[3] Plaintiff pleads that he suffered "retaliation … for running for Probate Judge based on … the exercise of his First Amendment Right to free speech by running for political office." *Id.* ¶ 17.

In Count II, which duplicates the First Amendment aspects of Count I,[4] Plaintiff avers that he was subject to "interference" with his First Amendment right to pursue public office and that Defendants "retaliated against him" for exercising this right. *Id.* ¶¶ 63, 70.

To one degree or another, Plaintiff has a right under the First Amendment to

County Commission, and Turner. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

[3] Paragraphs 1 through 43 are incorporated by reference into Count I and Count II. First Amended Complaint ¶¶ 48, 59. Both counts contain First Amendment claims against Defendants.

[4] The First Amended Complaint is not a good model for a well-drafted pleading. Among its weaknesses is repetitious averments, such as those in Count I and Count II and those in Count I and Count IV.

run for political office without interference from state officials.[5] *Compare Randall v. Scott*, 610 F.3d 701, 711 (11th Cir. 2010) (though "there is no 'fundamental status to candidacy' . . . there is at least some constitutional right to candidacy") *with Thomas v. Mims*, 317 F. Supp. 179, 181 (S.D. Ala. 1970) ("the right to seek public office … is a 'fundamental' right"). "An interest in candidacy, and expression of political views without interference from state officials who wish to discourage that interest and expression, lies at the core of values protected by the First Amendment." *Randall*, 610 F.3d at 713.

Defendants' alleged behavior, if proven, would constitute a violation of Plaintiff's rights under the First Amendment.

> "For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, *there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially, his interest in freedom of speech*. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which [it] could not command directly.' *Speiser v. Randall*, 357 U.S. 513, 526. Such interference with constitutional rights is impermissible."

*Rutan v. Republican Party of Illinois*, 497 U.S. 62, 72 (1990) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)) (italic emphasis in original). In *Rutan*, the Supreme Court considered First Amendment rights and held that "promotion,

[5] The First Amendment is applicable to the States by operation of the Fourteenth Amendment. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

transfer, recall, and hiring decisions involving low-level public employees may [not] be constitutionally based on party affiliation and support." *Id.* at 65. And in *Sindermann*, the Supreme Court reaffirmed the principle that an employee's "lack of a contractual or tenure 'right' to re-employment … is immaterial to his free speech claim." 408 U.S. at 597-98. "[T]his Court has specifically held that the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights." *Id.* at 598.[6]

Defendants contend that Plaintiff's First Amendment claim must be dismissed because Sheriff Jones possessed "absolute authority" to terminate Plaintiff regardless of whether Plaintiff's political candidacy motivated the termination. Motion at 10. In support of this proposition, Defendants heavily rely on two Eleventh Circuit cases. The first is *Terry v. Cook*, 866 F.2d 373 (11th Cir. 1989). *Terry* is distinguishable. The *Terry* court wrote that "[u]nder the *Elrod–Branti* standard [established in two Supreme Court cases], loyalty to the individual sheriff … is an appropriate requirement for the effective performance of a deputy sheriff [in Alabama]." 866 F.2d at 377. In recognition of the loyalty interest, the *Terry* panel said that an Alabama sheriff has "absolute authority … to decline to reinstate those [deputy sheriffs] who did not support him [as candidate for sheriff]." *Id.*

---

[6] "When an employee engages in constitutionally protected conduct, 'it is ... a question of fact' " for the jury as to whether the employee was actually or constructively discharged because of the protected conduct. *Sykes v. McDowell*, 786 F.2d 1098, 1104-05 (11th Cir. 1986) (quoting *Schneider v. City of Atlanta*, 628 F.2d 915, 920 (5th Cir. 1980)).

The *Terry* decision does not support dismissal of Plaintiff's First Amendment claims. Unlike *Terry*, Plaintiff's lawsuit does not involve a deputy sheriff's loyalty to the sheriff, *e.g.*, a situation where Plaintiff ran against Sheriff Jones in an election for the office of sheriff or supported another person who opposed Sheriff Jones in an election for sheriff. Instead, it is alleged that Sheriff Jones and the other Defendants fired Plaintiff for "running for Probate Judge of Perry County." First Amended Complaint ¶ 56. Because Probate Judge and Sheriff are separate and distinct political offices, Plaintiff's loyalty as a deputy to Sheriff Jones is simply not at issue in this case.

Furthermore, *Terry* and its "absolute authority" verbiage are tempered by other legal principles. First, as noted earlier, the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially, his interest in freedom of speech." *Sindermann*, 408 U.S. at 597. Thus, the concept of "absolute authority" is subordinate to the protection of constitutionally protected rights. Second, it is well-established that a sheriff cannot use his "absolute authority" to justifiably engage in unlawful actions such as racial discrimination. *Alexander v. Fulton County*, 207 F.3d 1303, 1321 (11th Cir. 2000) (citing numerous cases acknowledging that "there can be no doubt that in December 1992, when Sheriff Barrett assumed office, it was clearly established that intentional discrimination in the workplace on account of race violated federal law"), *overruled on other grounds*,

*Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003).[7]

The other case that Defendants hang their hat on with respect to a sheriff's authority is *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Motion at 9; Reply at 7-8. But instead of supporting Defendants, *Randall* eviscerates their position. In *Randall*, the Eleventh Circuit reversed the district court's dismissal of plaintiff Randall's complaint for infringement of his First Amendment right to run for office. 610 F.2d at 714. Randall was the chief of staff for District Attorney Scott. *Id.* at 703. Randall announced his candidacy for the chairman of a county board. *Id.* District Attorney Scott, under pressure from her husband who wanted to run for the same board chairman position, fired Randall from his position in the DA's office. *Id.* at 704. Randall's loyalty to the DA in the workplace was not at issue.[8] Randall filed suit and alleged retaliatory termination in violation of his rights under the First Amendment. *Id.* at 703. The Eleventh Circuit held that based on the allegations in the complaint, "the state has no interest in preventing Randall from running for office" and that "dismissal of Randall's complaint cannot be affirmed on the failure to state the denial

---

[7] At least one Eleventh Circuit panel has questioned the holding in *Terry*. Adhering to *Terry* because it was binding precedent, the court in *Cutcliffe v. Cochran* held that a Florida sheriff had the authority to fire sheriff deputies for supporting another candidate for sheriff. 117 F.3d 1353, 1357 (11th Cir. 1997). However, the panel stated its belief that "*Terry* should be revisited en banc because it may be viewed as inconsistent with *Branti* [*v. Finkel*, 445 U.S. 507 (1980)]." *Id.*

[8] "We agree that if Randall decided to run against Scott for Clayton County District Attorney, Scott would have good legal reason to discharge him due to the state's interest in office loyalty. That is not the case here." *Randall*, 610 F.3d at 714.

of a First Amendment right." *Id.* at 714. Plaintiff Fikes' First Amendment claims in Count I and Count II align with *Randall*, and, accordingly, cannot be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[9]

Defendants also contend that Perry County Commission should be dismissed from Count I of the Complaint because "Fikes has not pled specific facts showing that the Perry County Commission controlled any of the essential terms and conditions of his employment." Motion at 4. Defendants also cite to Swindle v. Jefferson County Comm., 2010 WL 11614248 (N.D. Ala. Mar. 30, 2010), which correctly explains that Sheriff's employees are state employees and not county employees. Therefore, for

---

[9] Defendants argue that *Randall* could be helpful to Plaintiff only if there is an explicit averment in his complaint that he was terminated for "purely personal reasons" and that there is no such precise pleading in the First Amended Complaint. Reply at 7-8. This argument is rejected for four independent reasons. First, because the *Randall* decision does not contain direct quotes from the complaint on this subject, it would go too far to hold that such exact pleading is required to defeat a Rule 12(b)(6) motion. Second, it is evident that the *Randall* panel used the phrase "purely personal reasons" in a descriptive fashion to summarily describe the pleadings in that case as indicating that "the state has no interest in preventing Randall from running for office" and did not use the phrase as an essential element of its legal holding. 610 F.3d at 714. Before it wrote "purely personal reasons", the court acknowledged the following: "Randall was not discharged for a conflict with Scott or the position of Clayton County District Attorney; Randall's discharge was entirely related to Scott's husband, and Scott's personal relationship with her husband." *Id.* Third, taking an adverse action against an employee for an unconstitutional or unlawful reason can certainly fall within the broad, general concept of a "purely personal reason". Plaintiff has amply pled unconstitutional misconduct by the Defendants. Fourth, Plaintiff pleads that Defendants infringed upon his First Amendment right to run for political office by "denying him earned leave and terminating his employment" as Chief Deputy Sheriff "without just cause." First Amended Complaint ¶ 31. At the very least, "without just cause" sufficiently implies that Defendants acted for personal, unconstitutional, or unlawful reasons.

purpose of employment claims (i.e. termination) the County Commission is not Fikes employer. However, the Court knows of no requirement that the County Commission be a joint employer for purposes of Fike's First Amendment interference claims. The County Commission is alleged to have worked in concert with the Sheriff to interfere with Fike's right to run for public office. Accordingly, the Motion is denied with respect to Defendants' request to dismiss Perry County Commission from Count I of the First Amended Complaint.

Defendants' final argument concerning the § 1983 First Amendment claims is that Sheriff Fikes is entitled to qualified immunity because there was "no clearly established First Amendment protection given to a Chief Deputy Sheriff who runs for political office in Alabama." Motion at 12.

For purposes of this Motion, the Court assumes, without deciding, that the adverse employment actions that Sheriff Jones allegedly took against Plaintiff were within the scope of his discretionary authority. With that, the burden shifts to Plaintiff to show that Sheriff Jones is not entitled to qualified immunity. *Nute v. White*, 152 F.4th 1311, 1318 (11th Cir. 2025).[10] This burden is satisfied if it was clearly established by November or December 2023[11] that a government official violates the First Amendment if he terminates a subordinate employee for being a

---

[10] "After *Iqbal* it is clear that there is no 'heightened pleading standard' " in the Eleventh Circuit for plaintiffs in civil rights cases where a defendant asserts qualified immunity. *Randall*, 610 F.3d at 710.

[11] These are the pertinent dates. See First Amended Complaint ¶¶ 8-43.

candidate for a political office other than the office held by the government official. *See id.*

> The clearly established law requirement can be met through one of three ways:
>
> (1) case law with indistinguishable facts clearly establishing the constitutional right;
>
> (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or
>
> (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.
>
> *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. 2025) (en banc) (quotation marks omitted).
>
> At the heart of the inquiry into whether [Sheriff Jones] violated clearly established law lies this question: "Did [he] have fair warning when [he] engaged in the conduct giving rise to the claim that the conduct was unconstitutional?" *Cantu v. City of Dothan*, 974 F.3d 1217, 1233 (11th Cir. 2020). If so, he is not entitled to qualified immunity. See *id.* at 1235.

*Nute*, 152 F.4th at 1318-19 (some bracketed text in original). *See generally Acevedo v. City of Miami*, --- F.4th ----, 2026 WL 2508872 at *5 (11th Cir. Aug. 26, 2026).

Sheriff Jones had fair warning that his alleged misconduct – taking adverse employment actions against a deputy sheriff for becoming a candidate for a political office other than Sheriff of Perry County – was unconstitutional. The clearly established requirement is satisfied in two ways, either of which is sufficient on its own to defeat the qualified immunity defense. First, in 2023 there was prior Eleventh Circuit case law with indistinguishable core facts which clearly established Plaintiff's constitutional right to run for office other than Sheriff of Perry County without

interference or retaliation by Sheriff Jones. In 2010, our Circuit Court of Appeals clearly established that Plaintiff has a right under the First Amendment to run for a political office other than that held by his superior without interference from government officials. *Randall*, 610 F.3d 701. The facts and holding in *Randall* are summarized, *supra*. For present purposes, it is enough to say that the *Randall* court acknowledged that "there is at least some constitutional right to candidacy" and that the allegations in the complaint showed that Randall's government employment supervisor had "no [legitimate] interest in preventing Randall from running for office" that was not the supervisor's office. *Id.* at 711, 714. "An interest in candidacy, and expression of political views without interference from state officials who wish to discourage that interest and expression, lies at the core of values protected by the First Amendment." *Id.* at 713.

Second, long before 2023, broad statements of principle within controlling case law clearly established Plaintiff's constitutional right to run for office other than Sheriff of Perry County without infringement by Sheriff Jones. In 1972, the Supreme Court held that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially, his interest in freedom of speech." *Sindermann*, 408 U.S. at 597. And, as previously observed, in 2010 the Eleventh Circuit made it clear that in this federal circuit "there is at least some constitutional right to candidacy" under the Free Speech clause of the First Amendment. *Randall* 610 F.3d at 714. Sheriff Jones had fair warning that he could not take adverse employment actions against a subordinate for exercising the

constitutional right to be a candidate for a political office other than Sheriff of Perry County. *See generally Joyner v. City of Atlanta*, 170 F.4th 1320, 1340-41 (11th Cir. 2026) (reversing summary judgment for defendants on a First Amendment retaliation claim and applying the "broad principle of law approach" to qualified immunity, held that "it was clearly established that government officials cannot lawfully strip an employee of 'privileges of [his] employment' where those privileges are important enough to the employee that taking them away would chill his expression of protected speech") (brackets in original); *Jarrard v. Sheriff of Polk County*, 115 F.4th 1306, 1324-25 (11th Cir. 2024) (reversing the district court, held that under the "broad statement of principle" prong qualified immunity did not shield defendants from plaintiff's First Amendment retaliation claim), *cert. denied sub nom. Moats v. Jarrard*, 145 S. Ct. 2702 (2025). For the forgoing reasons, Defendants' Motion is due to be denied with respect to Sherriff Jones' invocation of qualified immunity regarding the First Amendment claims in Count I and Count II.

Because Plaintiff has stated viable First Amendment claims against all Defendants and Sheriff Jones is not entitled to qualified immunity concerning the same, the Motion is **DENIED** with respect to the First Amendment § 1983 claims in Count I and Count II.

### C. <u>Count I and Count IV – § 1983 claims against all Defendants for denial of Fourteenth Amendment due process rights</u>

Broadly construing the averments in the First Amended Complaint, Plaintiff asserts three types of Fourteenth Amendment due process claims against

Defendants: (1) denial of pre-deprivation procedural due process concerning Plaintiff's property interest in his employment as Chief Deputy and the associated wages and benefits including, but not limited to, paid or unpaid leave of absence; (2) denial of procedural due process as to a liberty interest, namely, Plaintiff's alleged right to a post-deprivation hearing to protect and defend his reputation; and, (3) denial of substantive due process when Plaintiff was purportedly terminated without cause. First Amended Complaint ¶¶ 24, 25, 26, 28, 31, 34, 37, 55, 85, 94, 97, 102, 103. *See generally* Opposition at 9-14. As explained below, Plaintiff has not stated a viable substantive due process claim but has stated cognizable procedural due process claims for the Defendants' alleged deprivation of property interests concerning his employment and deprivation of his liberty interest in his reputation.

Before proceeding, the Court will address Defendants' argument that Plaintiff's due process claims should be dismissed because Plaintiff has alleged only a negligent failure to provide him with due process rights. In ¶ 55 of the First Amended Complaint, Plaintiff avers that "Sheriff Billy Jones, Commissioner Albert Turner Jr. and the Perry County Commission" are liable under 42 U.S.C. § 1983 for violating his due process rights under the Fourteenth Amendment because they were "negligent in investigating and referring Fikes 'Notice of Claim' regarding his wrongful termination for a hearing before the Perry County Commission or comparable process or procedure." Defendants correctly point out that "the Due Process Clause [of the Fourteenth Amendment] is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or

property." Motion at 5 (quoting *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). However, ¶¶ 31 and 37 of the First Amended Complaint allege that due process was denied without the label of "negligent" or "unintended", and Plaintiff incorporated these paragraphs into Counts I and IV. *Id.* ¶¶ 48, 79. Given these additional averments in the complaint, Defendants' negligence argument is rejected.

1. **Pre-Deprivation Procedural Due Process for Protection of a Property Interest**

In Counts I and IV, Plaintiff seeks damages and other relief pursuant to 42 U.S.C. § 1983 based on allegations that his employment as Chief Deputy was unconstitutionally terminated without a pre-deprivation hearing. *E.g.*, First Amended Complaint ¶¶ 31, 55, 85, 94, 97. Defendants contend that the pre-deprivation procedural due process claim should be dismissed because Plaintiff "has not pled that he possessed a right to continuing employment with the Sheriff" and that such pleading is necessary to establish a property right under the due process clause. Motion at 5.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). "[T]he range of interests protected by procedural due process is not infinite." *Id.* at 570.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Id.* at 576. "To have a property interest in a benefit, a person clearly must have more

than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. "Property interests … are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

The property interests "subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' " *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (quoting *Roth*, 408 U.S. at 577). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Id.* (citing *Roth*, 408 U.S. at 577).

The Supreme Court has held that written contracts, *Roth* at 576–77, and implied binding contracts or promises, *Sindermann* at 601-03, can each function as an independent source giving rise to a protectable property interest. Importantly, in *Sindermann* the high court specifically held that the Fifth Circuit Court of Appeals was right to reverse summary judgment for the defendants where the plaintiff "alleged the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent 'sufficient cause' ." 408 U.S. at 602-03.

Contrary to Defendants' assertion in the Motion, Plaintiff has pled that he had

a right to continued employment as Chief Deputy. Plaintiff alleges that he had the "protected property right of employment". First Amended Complaint ¶¶ 36, 37, 73. *See also id.* ¶ 74 (Plaintiff alleges that he had "the right to continue his employment with the Perry County Sheriff's Office as Chief Deputy"); *id.* ¶ 75 (Plaintiff invokes his "employment property interest"). Plaintiff also alleges that he had an "employment contract with the Perry County Sheriff's Department and the State of Alabama." *Id.* ¶16.[12]

Moreover, Plaintiff has also pled that he was denied the right to receive a paid leave of absence. Plaintiff alleges that in November 2023 he "informed Defendant Billy Jones he was electing to use his accumulated annual leave (vacation) time instead of unpaid political leave, which was another valid acceptable option under the Perry County Sheriff's Employee Policies and Procedures under which he was hired and employed." *Id.* ¶ 12. Plaintiff avers that he "was not paid for any of the time he was off to lawfully pursue political office in 2023" and that he was "not allowed to use his accrued leave". *Id.* ¶¶ 13-14. *See also* Plaintiff's sworn Notice of Claim at 2 (attached to First Amended Complaint as Doc# 13-1) ("I had sufficient annual leave to cover my time spent running for office, but it was denied to me by the Sheriff and the County Commission."). Plaintiff further alleges that Defendants needed but lacked cause to deny him earned leave or terminate his employment. *Id.* ¶¶ 31, 33.

Letters that Defendants Perry County Commission and Sheriff Jones sent to

---

[12] As of the date of this Order, a copy of this employment contract is not on file with the Court.

Plaintiff show the important relationship between the leave that Plaintiff says he was denied and the subsequent termination of his employment. In a letter alleged to have been sent on or about November 22, 2023, Perry County Commission informed Plaintiff that "there is no record of approved requested leave" and that the "lack of approved leave has caused your employment status to change to non-pay status, subject to termination." *Id.* ¶ 19 n.3 (citing Exhibit B (Doc# 13-2, PageID# 244)). And, in his letter to Plaintiff dated December 11, 2023, Sheriff Jones cited Plaintiff's alleged violation of county leave rules as a justification for separating Plaintiff from employment. *Id.* ¶ 23 n.4 (citing Exhibit B (Doc# 13-2, PageID# 245)).

If admissible evidence later proves that Plaintiff was owed paid or unpaid leave and also proves that Defendants failed to extend such leave to Plaintiff, then it could be concluded that Defendants wrongfully manufactured a leave scenario that the Sheriff used deny him a right to continued employment. Such facts, if proven, would establish a property interest warranting due process protections.

In *Sindermann*, the Supreme Court ruled that the plaintiff in that case "must be given an opportunity to prove the legitimacy of his claim of such entitlement [to continued employment absent 'sufficient cause'] in light of 'the policies and practices of the institution.' " 408 U.S. at 602-03. Similarly, the Court determines that Plaintiff Fikes should have the opportunity to prove the legitimacy of his property interest claim.

At this juncture it is important to recognize that any pre-deprivation procedural due process to which Plaintiff might have been entitled is not necessarily

defined or confined by established procedures such those in Ala. Code 11-43-230, Perry County Employee Policies and Procedures (hereinafter "County Handbook"), or some other existing formal procedural system. In other words, it is possible that Plaintiff could ultimately lose his claims in this case to entitlement to hearings and process under Ala. Code 11-43-230 and the County Handbook (explored below) but still have a right to some form of pre-deprivation procedural due process with respect leave and termination of employment. The Supreme Court's *Loudermill* opinion explains this concept.

> In *Vitek v. Jones*, 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980), we pointed out that "minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." This conclusion was reiterated in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982), where we reversed the lower court's holding that because the entitlement arose from a state statute, the legislature had the prerogative to define the procedures to be followed to protect that entitlement.
>
> …. The point is straightforward: the Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Arnett v. Kennedy*, *supra*, 416 U.S., at 167, 94 S.Ct., at 1650 (POWELL, J., concurring in part and concurring in result in part); see *id.*, at 185, 94 S.Ct., at 1659 (WHITE, J., concurring in part and dissenting in part).

> In short, once it is determined that the Due Process Clause applies, "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The answer to that question is not to be found in the [state] statute [that conferred the property interest].

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

Lastly, Defendants argue that Plaintiff has an obligation to pursue all available remedies under states law before recovering damages under a § 1983 claim for deprivation of procedural due process rights – whether for a protected property interest or a protected liberty interest. Motion at 6-7; Reply at 6. *See generally Peden v. Stephens*, --- F.4th ----, 2026 WL 2420934, at *4-*6 (11th Cir. Aug. 19, 2026); *McKinney v. Pate*, 20 F.3d 1550, 1562-63 (11th Cir. 1994), *abrogated on other grounds by County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). This issue is not ripe for disposition. Plaintiff has sufficiently pled a deprivation of procedural due process rights. Plaintiff has also alleged that he requested procedural due process from Defendants but was ignored. *E.g.*, First Amended Complaint ¶¶ 55, 102-04. It remains to be seen whether as a matter of fact and law Defendants should prevail under *McKinney* and its progeny.

For the reasons set forth above, the Motion is **DENIED** with respect to the pre-deprivation procedural due process claims in Count I and Count IV.

### 2. Post-Deprivation Procedural Due Process for Protection of a Liberty Interest

Regarding the claim that Defendants violated Plaintiff's procedural due

process rights by depriving him of a post-deprivation hearing to protect and defend a liberty interest in his reputation, Plaintiff has stated a claim upon which relief can be granted. Plaintiff's averments closely align with those in the case of *Owen v. City of Independence*. In *Owen*, the Supreme Court identified facts sufficient to sustain a determination that government defendants had deprived the terminated plaintiff of liberty without due process of law as follows:

> *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971), held that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." In *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972), we explained that the dismissal of a government employee accompanied by a "charge against him that might seriously damage his standing and associations in his community" would qualify as something "the government is doing to him," so as to trigger the due process right to a hearing at which the employee could refute the charges and publicly clear his name. In the present case, the city – through the unanimous resolution of the City Council – released to the public an allegedly false statement impugning petitioner's honesty and integrity. Petitioner was discharged the next day. The Council's accusations received extensive coverage in the press, and even if they did not in point of fact "cause" petitioner's discharge, the defamatory and stigmatizing charges certainly "occur[red] in the course of the termination of employment." *Cf. Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). Yet the city twice refused petitioner's request that he be given written specification of the charges against him and an opportunity to clear his name. Under the circumstances, we have no doubt that the Court of Appeals correctly concluded that the city's actions deprived petitioner of liberty without due process of law.

445 U.S. 622, 633 n.13 (1980). Even an at-will employee who claims damage to reputation in connection with termination of government employment can state a legally cognizable claim for deprivation of liberty under § 1983. *Campbell v. Pierce County*, 741 F.2d 1342, 1344 (11th Cir. 1984), *cert. denied*, 470 U.S. 1052 (1985).

Plaintiff alleges that Defendants' conduct with respect to their handling of his request for leave and termination of his employment damaged his reputation. First Amended Complaint ¶¶ 47, 71, 96, 107. Plaintiff specifically alleges that on December 10, 2023, before he was terminated on December 17, 2023,[13] while speaking publicly over radio airwaves, Defendant Turner "falsely accus[ed] Fikes of misuse of [Perry] County vehicles"; "falsely accused Plaintiff Fikes of absence without leave, dishonesty, dereliction of duty, insubordination, failure to follow County employee rules and regulations, and failure to follow the directions from the Sheriff related to requesting leave"; and, "accused Plaintiff Fikes of stealing time or payroll fraud by being paid a salary but not reporting for duty to earn that salary." *Id.* ¶¶ 44-46. Plaintiff has stated a cognizable claim for deprivation of rights under the liberty interest prong of procedural due process. Accordingly, the Motion is **DENIED** with respect to the post-deprivation procedural due process claims in Count I and Count IV.

### 3. Substantive Due Process

In his brief, Plaintiff argues that he has a valid claim for violation of his substantive due process rights. Opposition at 14. In their Reply,[14] Defendants correctly contend that "the alleged wrongful discharge of an employee by a state actor does not give rise to a substantive due process claim but instead implicates only procedural due process." *Bell v. City of Demopolis*, 86 F.3d 191, 192 (11th Cir. 1996)

---

[13] First Amended Complaint ¶¶ 35, 43, 60, 105.
[14] Reply at 5-6.

(citing *McKinney*, *abrogated on other grounds*). For this reason, Plaintiff's substantive due process claim fails as a matter of law.

The substantive due process claim must be dismissed for two additional reasons. First, Plaintiff has made no proffer of a "careful description of the asserted fundamental liberty interest." *See* First Amended Complaint (contains no attempt to describe a fundamental liberty interest at stake); Opposition at 14 (same).[15] Second, Plaintiff has made no effort to show that his alleged substantive right is a fundamental right or liberty that is, on an objective basis, deeply rooted in America's history and tradition. *See* First Amended Complaint (contains no attempt to describe a deeply rooted fundamental liberty interest); Opposition at 14 (same). Each of these two showings is essential.

> The Due Process Clause of the Fifth Amendment [and of the Fourteenth Amendment] requires the Government to provide due process of law before it deprives someone of "life, liberty, or property." Under our precedent, the Clause promises more than fair process: It also "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Glucksberg*, 521 U. S., at 720, 117 S.Ct. 2258.[16] When a fundamental right is at stake, the Government can act only by narrowly tailored means that serve a compelling state interest. *Id.*, at 721, 117 S.Ct. 2258. Identifying unenumerated rights carries a serious risk of judicial overreach, so this Court "exercise[s] the utmost care whenever we are asked to break new ground in this field." *Id.*, at 720, 117 S.Ct. 2258 (internal quotation marks omitted). To that end, *Glucksberg's* two-step inquiry disciplines the substantive due process analysis. First, it insists on a "careful description of the asserted fundamental liberty interest." *Id.*, at 721, 117

---

[15] In fact, the First Amended Complaint contains no explicit reference to substantive due process.

[16] *Washington v. Glucksberg*, 521 U. S. 702 (1997). *Glucksberg* concerned the assertion of a substantive due process right under the Fourteenth Amendment.

> S.Ct. 2258 (internal quotation marks omitted). Second, it stresses that "the Due Process Clause specially protects" only "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Id.*, at 720–721, 117 S.Ct. 2258 (internal quotation marks omitted).

*Department of State v. Munoz*, 602 U.S. 899, 909-10 (2024) (footnote and bracketed text added). Plaintiff's silence on this matter might be because the Eleventh Circuit has specifically held that a state-created property right to employment is not "so fundamental that our democratic society and its inherent freedoms would be lost if that right were to be violated" that it "is deserving of substantive due process protection." *McKinney*, 20 F.3d at 1561 (*en banc*) (citing *Harrah Ind. School Dist. v. Martin*, 440 U.S. 194, 198 (1979)).

**D. <u>Count I and Count IV – § 1983 claims against all three Defendants concerning right to "equal treatment" under the Fourteenth Amendment</u>**

Count I also contains "a claim against Defendant Sheriff Billy Jones and the Perry County Commission [and Albert Turner, Jr.][17] arising under … the Fourteenth Amendment's guarantees of equal treatment under the law, enforceable pursuant to § 42 U.S.C. 1983 for adverse actions taken under color of state law." First Amended Complaint ¶ 52. This claim is more commonly known as an equal protection claim in recognition of the wording of the applicable provision of the Fourteenth Amendment.[18] Specifically, in Count I

---

[17] See footnote 2, *supra*, for the explanation of how Defendant Turner is included in Count I.

[18] Among other things, Section 1 of the Fourteenth Amendment of the Constitution

Plaintiff avers that he was denied equal protection based on his race and age. *Id.* ¶ 57.

Count IV duplicates Count I with two notable additional averments. First, Count IV vaguely alleges the denial of equal protection based on Plaintiff's sex as well as his race and age. *Id.* ¶ 83. Second, it explicitly names Albert Turner Jr. as a defendant in addition to Sheriff Jones and Perry County Commission. *Id.* ¶ 83, *ad damnum* clause of Count IV.

Defendants argue that Plaintiff's pleadings with respect to the "equal treatment" claims "are so vague and conclusory that they don't state a plausible claim for relief." Motion at 14, 21-22. Defendants are correct.

When alleging a violation of the Equal Protection Clause of the Fourteenth Amendment, the complaint must identify a purported comparator to avoid dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim with facial plausibility. *Iqbal*, 556 U.S. at 678; *Whitaker v. Bd. of Regents of Univ. Sys. of Georgia*, 2021 WL 4168151 at *5 (11th Cir. Sept. 14, 2021). What the Eleventh Circuit wrote in *Whitaker* applies to this case.

> Here, Plaintiff has alleged no facts from which we can draw a reasonable inference that Plaintiff was treated differently from another similarly-situated person or that the complained-of differential treatment was motivated by an intent to discriminate on an unlawful ground. Plaintiff identified no valid comparator and alleged no other specific facts that would raise his equal protection claim above the speculative level. *See Twombly*, 550

---

of the United States forbids any State from depriving "any person of life, liberty, or property, without due process of law" or from denying "to any person within its jurisdiction the equal protection of the laws."

> U.S. at 555, 127 S.Ct. 1955.
>
> On these pleadings and for these reasons, we affirm the district court's dismissal of Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).

2021 WL 4168151 at *5.

The averments in the case at bar are even more deficient than what the *Whitaker* court assessed and found inadequate. In *Whitaker*, the plaintiff's complaint identified one comparator. Here, Plaintiff's First Amended Complaint fails to identify **<u>any</u>** purported comparators – whether similarly situated or not. Instead, Plaintiff just makes conclusory allegations such (1) "other Deputies who were not black and or over forty (40) were allowed to run for political office without taking unpaid leave with no adverse job actions taken against them" and (2) Defendants "denied Plaintiff his right to Equal Treatment under the law … afford[ed] to other employees outside Fikes race (Black), age (over forty (40)), and sex (male)." First Amended Complaint ¶¶ 40, 83.[19] No supposed comparators have been identified by Plaintiff.

Accordingly, all the equal treatment claim / equal protection claims in

---

[19] Plaintiff makes similar vague allegations elsewhere in his pleading. *E.g.,* First Amended Complaint ¶ 27 ("Previously, other Perry County Sheriff's deputies outside Plaintiff's protected characteristics (white) had been allowed to campaign for public office in Perry County without taking any leave and continuing to report for duty as regularly scheduled Deputy Sheriffs in Perry County."); *id.* ¶ 36 (averment that Plaintiff was denied "his right to take paid leave while running for public office, like white citizens"); *id.* ¶ 57 (alleging that Defendants denied Plaintiff "his right to appeal his termination before the County Commission, as white and younger deputies have or would be allowed to do").

Count I and Count IV of the Complaint are due to be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted.[20]

### E. Count III – § 1981 claim against Sheriff Jones as enforced via § 1983

In Count III, Plaintiff alleges that Sheriff Jones is liable under 42 U.S.C. § 1981, enforced by way of 42 U.S.C. § 1983, for denying him various employment rights concerning his position as Chief Deputy. First Amended Complaint ¶¶ 72-78. Count III is premised upon averments that Sheriff Jones failed to provide Plaintiff with the same privileges of employment as were afforded to "white citizens" or "white deputies". *Id.* ¶¶ 73, 75, 76.

"Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Ferrill v. Parker Grp Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). One of Defendants' arguments in the Motion is that Plaintiff's § 1981 claim

> does not contain plausible allegations of race discrimination….Fikes's Section 1981 claim suffers from the same weakness as his Section 1983 "equal treatment" claim. (See Section I.D. above.) He generally says that Sheriff Jones denied him "the same or equal provisions of employment as white citizens...." (Doc. 13 at 14 ¶ 73.) But, as demonstrated above, that conclusory statement is insufficient to state a plausible claim for discrimination.

---

[20] Plaintiff's Opposition contains no viable reply to Defendants' sound legal argument on this matter. Instead, counsel for Plaintiff offers the puzzling contention that this federal court, which is obligated to apply the Federal Rules of Civil Procedure, should employ the more lenient state procedural law of Alabama for assessment of a motion to dismiss. Opposition at 21-22. This argument is without merit. **Counsel for Plaintiff** should avoid making baseless legal arguments going forward.

Motion at 21. On this point, Defendants are correct.

Plaintiff has failed to allege race discrimination with particularity. Instead, in a vague and conclusory fashion, Plaintiff merely avers that he was denied the same privileges of employment that were afforded to "white citizens" or "white deputies". First Amended Complaint ¶¶ 73, 75, 76. *See also* part D of this Order, *supra*. Plaintiff has merely offered unsupported conclusory allegations that warrant dismissal. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1274 (11th Cir. 2004) (affirming 12(b)(6) dismissal of § 1981 claim where plaintiffs' "conclusory allegations were wholly unsupported by any specific factual averments"). Accordingly, Count III is due to be **DISMISSED with prejudice** for Plaintiff's failure to state a claim upon which relief can be granted.

**F. <u>Count V – § 1985(3) claim against all Defendants for conspiracy to interfere with civil rights</u>**

In Count V, Plaintiff alleges multiple violations of 42 U.S.C. § 1985(3), to wit: that Defendants conspired together to deprive Plaintiff of (1) "his First Amendment Free Speech rights"; (2) "his equal right and privilege to use accumulated paid leave while running for Probate Judge in 2023, unlike white deputies, who were allowed to do so"; (3) employment by terminating him as Chief Deputy of Perry County "to deny Fikes rights to equal treatment under the law"; (4) due process by denying him a pre-determination hearing and post-termination appeal; (5) rights under the County Handbook and Ala. Code § 11-43-230; and, (6) his right "to an appeal of his termination before the Perry County Commission, like white and or younger

deputies", *Id.* ¶¶ 88, 92, 93, 94, 98.

Defendants argue that Plaintiff's § 1985(3) claim must be dismissed because all of the underlying claims of alleged wrongdoing that form the premise of the purported conspiracy are themselves due to be dismissed on the authority of *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) ("Having concluded that Plaintiffs' substantive claims fail on the merits, their [§ 1985(3)] conspiracy claim fails as well because Plaintiffs would not have been 'deprived of any rights or privilege' by the Defendants' allegedly wrongful acts."). This legal proposition in *Denney* is a valid one. Accordingly, the following aspects of Count V are due to be dismissed with prejudice given the Court's other rulings in this Order: (a) any claim of unlawful conspiracy to deny Plaintiff equal treatment or equal protection on the basis of age, race, and/or sex; and (b) any claim of unlawful conspiracy to deny Plaintiff rights under Ala. Code § 11-43-230 (see the discussion of this statute, *infra*). The Motion is due to be denied with respect to all other aspects of Count V.

### G. <u>Count VI – claims based on Ala. Code § 11-43-230 and the County Handbook</u>

In Count VI of the First Amended Complaint, Plaintiff alleges that he was harmed "when the Defendants' [sic] failed to schedule a 'Pre-disciplinary' hearing before the Perry County Commission or other process to address his appeal of his suspension and termination by Sheriff Billy Jones pursuant to § 11-43-230 Code of Alabama 1975 and the handbook of the Perry County Sherrif [sic] and the Perry County Commission in full force and effect at the time." The Court will separately

address Plaintiff's invocation of Ala. Code § 11-43-230 and "the handbook of the Perry County Sherrif [sic] and the Perry County Commission" (County Handbook).

As to the statute, Plaintiff does not have a right to a predisciplinary hearing under Ala. Code § 11-43-230 because this statutory provision only applies to "law enforcement officers" of a "municipality", i.e., a city or a town.[21] Plaintiff has not alleged that he is a law enforcement officer of a municipality, a city, or a town.

Title 11 of the Code of Alabama is entitled "Counties and Municipal Corporations". Title 11 has three subtitles: Subtitle 1 entitled "Provisions Applicable to Counties Only", Subtitle 2 entitled "Provisions Applicable to Municipal Corporations Only", and Subtitle 3 entitled "Provisions Applicable to Counties and Municipal Corporations". Section 11-43-230 is in Subtitle 2, which applies only to municipal corporations. The wording of § 11-43-230 clearly aligns with this structure. For example, subsection (a) reads: "Every municipality shall provide a predisciplinary hearing prior to the suspension or termination of its law enforcement officers, provided nothing herein shall preclude a municipality from placing a law enforcement officer on leave with pay until the person or body holding the hearing has made its decision in the matter." Section 11-43-230 simply does not apply to law enforcement officers who are employees of a county or the State of Alabama. *See generally Yeilding v. State ex rel. Wilkinson*, 167 So. 580, 587 (1936) ("The characteristics of counties are well defined in the law, and nothing is better settled than that a county is not a

[21] Defendants present this argument in their initial brief. Motion at 23-24.

municipal corporation."). The Motion will be granted as to the claims in Count VI concerning Ala. Code § 11-43-230.

The Motion is due to be denied with respect to Plaintiff's claim that he was deprived of rights under the County Handbook.[22] The Court notes that Defendants did not address the County Handbook in their Motion yet still asked the Court to dismiss Count VI in its entirety. See Motion at 23-24. At any rate, Plaintiff alleges that Sheriff Jones invoked the County Handbook in connection with Plaintiff's request for leave and his status as an employee. *E.g.*, First Amended Complaint at 4 n.2 (Doc# 13) (Sheriff Jones "instructed Fikes to give the leave request letter to Human Resources to be handled by the Perry County Commission"); *id.* ¶ 23 n.4 (citing Exhibit B (Doc# 13-2, PageID# 245)) (letter from Sheriff Jones to Roy Fikes dated December 11, 2023, in which Sheriff cites Plaintiff's alleged "violation of county Political Leave Rules" as a justification for separation from employment with the Perry County Sheriff's Office). The claims in Count VI that relate to the County Handbook shall remain pending because there is no argument or rationale for their dismissal.

For the reasons stated above, the Motion will be granted with respect to Plaintiff's claims in Count VI that concern Ala. Code § 11-43-230, and the Motion will be denied with respect to Plaintiff's claims in Count VI that concern the County Handbook.

---

[22] Per Doc# 11-1, the actual title of the County Handbook is "Perry County Employee Policies and Procedures".

## H. Conclusion

For the reasons set forth herein, Defendants' Motion to Dismiss (Doc# 16) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to (1) the substantive due process claim; (2) all equal treatment / equal protection claims; (3) Count III, which contains the § 1981 claim; (4) all claims in Count V alleging unlawful conspiracy to deny Plaintiff equal treatment or equal protection on the basis of age, race, and/or sex; (5) all claims in Count V alleging unlawful conspiracy to deny Plaintiff rights under Ala. Code § 11-43-230; and, (6) all claims in Count VI that concern Ala. Code § 11-43-230. Each of these claims is hereby **DISMISSED with prejudice**.

The Motion is **DENIED** with respect to (1) all First Amendment § 1983 claims in Count I and Count II, (2) all pre-deprivation procedural due process claims in Count I and Count IV, (3) all post-deprivation procedural due process claims in Count I and Count IV, (4) all claims in Count V except for the specific aspects of it dismissed by this Order, and (5) all claims in Count VI that concern the County Handbook.

**DONE** and **ORDERED** the **18th** day of **September 2026**.

/s/ Kristi K. DuBose
**KRISITI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**